**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **KAREN A. AUDET,** | ) | **CASE NO. 4:08CV3220** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM AND ORDER** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the denial, initially and again on reconsideration, of the Plaintiff's request for waiver of an overpayment of disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433. Section 205(g) of the Act provides for judicial review of the Commissioner's final decision. The Court has carefully considered the record and the parties' briefs, and as a result, concludes that the ALJ's decision denying the Plaintiff's request for waiver is not supported by substantial evidence in the record.

**PROCEDURAL BACKGROUND**

In January of 1992, Plaintiff Karen Audet (formally known as Karen Dunlap), was awarded Social Security disability insurance benefits based on the application she submitted on December 15, 1992. (Social Security Transcript, Filing No. 10 ("Tr.") at 19.) In October of 2003, after the expiration of her trial work period and extended period of eligibility, Audet returned to work at a substantial gainful activity level at the VA hospital. (Tr. at 44, 50, 54, 59, 77-79, 80, 95, and 114.) Plaintiff continued to work for the VA through July of 2004. (Tr. at 19, 70, 114, and 220.) The Social Security Administration ("SSA") determined that Audet had been overpaid since "[h]er disability ceased in [October

of] 2003, the first month she returned to [substantial gainful activity] level work after the end of her [extended period of eligibility]," and she continued to accept benefits from the SSA. (Tr. at 80.)

On July 14, 2005, Audet filed a request for waiver of overpayment recovery in which she alleged that the overpayment was not her fault, and that she could not afford to pay back the amount the SSA had overpaid her. (Tr. at 61-68.) She claimed she was told by an SSA employee, whom she contacted through the 1-800 telephone service, that she had been awarded an additional trial work period during which she could work and still receive benefits. (Tr. at 62.) Thus, Audet claimed she did not know she had to tell the SSA that she had returned to work. (Tr. 62.) As support for her claim that she was unable to repay the SSA, she wrote that she had monthly expenses totaling $1,203.00 and no assets or income. (Tr. at 64-66.) At that time, Audet listed her monthly household expenses to include: $243.00 for rent; $200.00 for groceries; $195.00 for gas, electricity, and telephone service; $50.00 for clothing; $90.00 for credit card payments; $50.00 for insurance payments; $300.00 for medical (*e.g.*, weekly psychotherapy) and dental expenses; and a combined $75.00 for car operation and maintenance expenses (Tr. 64 at 66.)

On October 3, 2005, Audet filed another request for waiver of recovery in which she indicated that she had a monthly income of $1,627.00 based on the $1,267.00 she receives in Social Security benefits, the $350.00 she receives in VA benefits, and the $10.00 she receives in food stamps. (Tr. at 87 and 90.) In this more recent October 2005 request for a waiver, Audet reported that she had monthly expenses totaling $2,151.00, up from the $1,203.00 she had reported in July. (Tr. at 86.) As of October 2005, Audet reported her monthly expenses to include the following: $243.00 for rent; $384 for food;

2

$361 for utilities; $50 for clothing; $346 for credit card payments; $52 for renter and car insurance; $470 for medical expenses; $155 for car operation and maintenance; $50 for loan payments; and $40 for hair cuts and miscellaneous spending. (Tr. at 86.) The only asset she claimed to own was a car valued at $300. (Tr. at 85.)

On October 12, 2005, the SSA determined that Audet was at fault in causing her overpayment, and, as a result, the SSA denied her request for waiver of recovery. (Tr. at 91-94.) She then filed a timely request for review and hearing before an administrative law judge ("ALJ"). (Tr. at 99.) On February 14, 2006, Audet's treating psychologist, Joseph L. Rizzo, Ph.D., submitted a letter indicating he had treated Audet for a severe anxiety disorder and post-traumatic stress disorder from September 2003, through September 2005. (Tr. at 141.) According to Dr. Rizzo, Audet was "experiencing massive and severe amounts of anxiety and post-traumatic stress symptoms" during this period, consequently, she likely did not understand her reporting obligations to the SSA. (Tr. at 141-42.)

On February 16, 2006, the SSA held an administrative hearing. (Tr. at 190-228.) At the hearing, Audet testified that she was receiving $1,332.00 in monthly benefits from Social Security and $364.00 in monthly benefits from the VA. (Tr. at 197-98.) She testified that $20.00 of her monthly Social Security benefits were being withheld to repay the SSA. (Tr. at 208). Audet also testified that her monthly expenses included $398.00 for rent; $199.00 for utilities (electricity, gas, water, and home phone); $116.00 for cellular phone service for her and her daughter; $100.00 for other living expenses; $200.00 for groceries; $58.00 for clothing expenses; $575.00 for credit card payments; $400.00 for insurance and medical expenses; and $90.00 for car operation and maintenance; and $370 for psychiatric

3

treatment. (Tr. at 197-202 and 225.)  Thus at the time of the hearing, Audet had a monthly income of $1,676.00, while her monthly expenses totaled $2,506.00.

On August 24, 2006, the ALJ issued a decision denying Audet's request for waiver of overpayment recovery. (Tr. at 16-21.)  Although the ALJ concluded that Audet was without fault in creating the overpayment, since her mental status prevented her from fully understanding her reporting obligations to the SSA, the ALJ found that recovery of the overpayment would not defeat the purpose of the Act or be against equity and good conscience. (Tr. at 20.)  The ALJ specifically found that recovery of the overpayment would not deprive Audet of income or resources needed for ordinary, necessary living expenses. (Tr. at 20.)  He based this conclusion on his factual findings that Audet's rent would soon be reduced and she was more than likely going to file for bankruptcy. (Tr. at 20.)  The ALJ also based his decision to deny Audet's request for waiver on his conclusion that much of the debt Audet had incurred was the result of "overspending on many non essential items." (Tr. at 20.)

On August 27, 2008, the Appeals Council denied Audet's request for review. (Tr. at 3-15).  Thus, the ALJ's decision now stands as the final decision of the Commissioner.

## STANDARD OF REVIEW

In reviewing an Administrative Law Judge's final decision, a district court does not re-weigh the evidence or revisit issues *de novo*.  *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)("As we have stated many times, we do not reweigh the evidence presented to the ALJ."); *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir. 1995)(holding that the district court does not "reweigh the evidence or try the issues de novo.").  Rather, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence

in the record as a whole supports the Commissioner's decision. *Id.* The Court will uphold the Commissioner's final decision "if it is supported by substantial evidence on the record as a whole." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)(quoting *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The Court must consider evidence that both detracts from, as well as supports, the Commissioner's decision. *Finch*, 547 F.3d at 935. As long as substantial evidence supports the Commissioner's decision, that decision may not be reversed merely because substantial evidence would also support a different conclusion or because a district court would decide the case differently. *Id.* ("If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits.")(quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir.1996)).

## DISCUSSION

Upon review of the record and applicable law, the Court concludes that the substantial evidence in the record does not support the ALJ's decision requiring Audet to repay the overpayment. 42 U.S.C. § 404(b) provides that:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

In this case, the ALJ determined that Audet was "without fault in receiving and accepting the erroneous benefits." (Tr. at 18)(internal quotations omitted.) Because Audet is not at fault for the overpayment, she is entitled to a waiver if requiring her to pay the overpaid amount would defeat the purpose of the Act, or be against equity and good conscience. *See* 42 U.S.C. § 404(b). In his final decision, however, the ALJ denied Audet's request for a waiver, concluding that such a denial would not defeat the purpose of the Act, nor would it be against equity and good conscience. (Tr. at 18). Upon review of the record and applicable law, the Court finds that the substantial evidence in the record supports the conclusion that the ALJ's denial of Audet's request for a waiver both defeats the purpose of the Act and is against equity and good conscience.

### 1. Defeating the Purpose of the Act

The applicable regulations define situations in which recovery of an overpayment would defeat the purpose of the Act as depriving "a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a). The regulation further provides: "This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." *Id.* Ordinary and necessary expenses include, but are not limited to:

> (1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under title XVIII), taxes, installment payments, etc.;
> (2) Medical, hospitalization, and other similar expenses;
> (3) Expenses for the support of others for whom the individual is legally responsible; and
> (4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

*Id.* § 404.508(a)(1). Section 404.508 further explains that recovery will defeat the purposes of the Act in "situations where the person from whom recovery is sought needs substantially all of [her] current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." 20 C.F.R. § 404.508(b) (2002).

The Program Operations Manual System ("POMS"), which are administrative guidelines issued by the SSA for processing claims, provide additional guidance as to when recovery will defeat the purpose of Title II. According to POMS GN 02250.115, recovery will defeat the purpose of Title II if a person goes into debt to meet his ordinary and necessary living expenses during recovery of the overpayments, and recovery may defeat the purpose of Title II if recovery of the overpayments reduces a person's assets to below $5,000 for a person with one dependent, plus $600 for each additional dependent. POMS GN 02250.115A2, A4. Assets may be liquidated to repay an overpayment and are available for repayment to the extent their total value exceeds $5,000 for a person with one dependent, plus $600 for each additional dependent. POMS GN 02250.115A4; POMS GN 02250.125. Certain items are not considered assets, such as the family home and car, but non-income producing Individual Retirement Accounts ("IRA") should be considered assets. POMS GN 02250.125B.

The Eighth Circuit Court of Appeals has interpreted and applied these regulations in *Coulston v. Apfel,* 224 F.3d 897 (8th Cir. 2000). In *Coulston*, the Eighth Circuit reversed the district court's finding that Coulston was at fault for the overpayment. *Id.* at 901. The court then determined that recovery of the overpayment would have defeated the purpose of the Act, stating the following:

7

> Coulston is far from well-off. Coulston works on-and-off as a part-time dishwasher, and he receives about $650 a month in social security benefits. Thus, his annual income skirts the poverty line. Coulston also has no savings account, so he obviously lives from check to check. In light of these circumstances, we credit Coulston's statement at the hearing that he "has a hard time making ends meet," and, because of this, we think taking even a small amount of benefits away from Coulston would defeat the purpose of social security.

*Id.* (citations omitted).

In making its determination regarding Coulston's assets, the Eighth Circuit cited *Banuelos v. Apfel,* 165 F.3d 1166, 1170-71 (7th Cir. 1999), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999), for the proposition that a Court must consider a Claimant's assets in determining whether recovery of an overpayment would defeat the purpose of social security. *Coulston,* 224 F.3d at 900. In *Banuelos,* the Seventh Circuit Court of Appeals, after considering the combined worth of all the Claimant's assets, determined that recovery of an overpayment would not defeat the purpose of the Act. *Banuelos*, 165 F.3d at 1170-1171. Banuelos incurred monthly expenses of between $1,300 and $1,602.45, and he had a monthly income of $1,028. *Id.* The court noted that § 404.508(a) requires a court to consider not only income, but also "financial resources" in determining whether recovery of an overpayment would defeat the purpose of social security. *Id.* at 1170. The court added that the phrase "financial resources" includes, among other things: savings; interest income; and equity in real estate. *Id.* Banuelos's overpayment totaled $39,799, and his liquid assets totaled approximately $16,000. *Id.* at 1168. However, a complete picture of Banuelos's assets is described as follows:

8

> In December of 1993, Banuelos agreed to receive a lump sum settlement of $200,000 in lieu of future workers' compensation benefits for his back injury. At the same time, Banuelos sold a condominium in Illinois that he and his children had been living in for a $12,000 profit and moved into a rented apartment. Of this $212,000 in workers' compensation benefits and profits from the condominium sale, Banuelos invested approximately $98,000 in a house in Guadalajara, Mexico, for his parents and sister to live in rent-free; loaned $9,500 to family and friends; invested $12,000 in a first car and $2,600 in a second car; paid off approximately $10,000 in credit card debt; deposited $19,000 in a three-month certificate of deposit, and placed the remainder in bank accounts to be spent on living expenses for Banuelos and his two children.

*Id.*

Comparing Audet to these two examples, the Court finds that Audet's financial situation is much closer to Coulston's than to Banuelos's. Like Coulston, Audet lives essentially from paycheck to paycheck. (*See* Tr. at 82-90, 197-202, and 225.) Audet's only asset is a 1994 Ford Espir, which Audet valued at $300 in October of 2005. (Tr. at 85.) However, according to POMS GN 02250.125B, a car is not considered to be an asset. Furthermore, the record shows that Audet lives frugally. Unlike Banuelos, Audet does not own two cars and a second home, and she has not recently paid off any large debts, invested any large sums, or possessed numerous bank accounts. At the time of the hearing, Audet reported a monthly income of $1,676.00, yet her monthly expenses totaled $2,506.00. While one could question whether each of Audet's monthly expenditures is essential, none appears frivolous or extravagant.

The Court has considered Audet's lack of assets and her monthly expenses ($2,506.00 at the time of the hearing), and concludes that if she were required to use any of her monthly income to repay the SSA, she would be deprived of funds necessary to meet ordinary and necessary living expenses. *Cf. Casey v. Astrue*, No. 4:08CV3028, 2009

WL 1554217 at *5 (D.Neb., June 03, 2009)(affirming the ALJ's denial of waiver where after repayment, the "plaintiff would be left with $9,898.75 in available assets."). The evidence presented to the ALJ in the present case is uncontroverted that Audet depends on all of her monthly income to cover expenses that are ordinary and necessary.

This Court notes that the ALJ based his decision in part on the assumption that, in the near future, Audet's monthly rent will decrease and she will file for bankruptcy. (Tr. at 20.) 20 C.F.R. § 404.508(b), however, requires the ALJ to consider a plaintiff's current economic circumstances only. 20 C.F.R. § 404.508(b)(stating that the ALJ will waive recovery in situations "where the person from whom recovery is sought needs substantially all of his *current* income (including social security monthly benefits) to meet *current* ordinary and necessary living expenses." (emphasis added.)  The regulation does not confer authority upon the ALJ to make projections as to what a plaintiff's income or expenses may be in the future.  Thus, to the extent that the ALJ relied on his determination that Audet's ordinary living expenses would be decreasing in the future, that reliance is reversible error.

The ALJ also relied on his finding that Audet had incurred her "debt by overspending on many non essential items" to support his conclusion that recovery would not defeat the purpose of the Act. (Tr. at 20.) The ALJ's finding in this regard is not supported by the substantial evidence on record. The ALJ does not list or explain which items in Audet's list of expenses constitute "non essential items."  Upon review of the record and applicable law, this Court finds that Audet's listed expenses fit within the regulations' definition of ordinary living expenses. (*See* CFR § 404.508(a)(1) and Tr. at 197-202 and 225.)

Although the ALJ maintains that Audet is "able to manage her monthly household expenses" (Tr. at 20), the substantial evidence in the record does not support this

conclusion. It is clear from the record that requiring Audet to pay the overypayment would present her with more debt. Therefore, considering the Eighth Circuit's interpretation of the applicable regulations, the Court finds that recovery of Audet's overpayments to the SSA would defeat the purpose of Title II of the Social Security Act within the meaning of 20 C.F.R. § 404.508.

### 2. Against Equity and Good Conscience

"The Social Security Act is silent as to the meaning of the phrase 'against equity and good conscience.'" *Groseclose v. Bowen*, 809 F.2d 502, 505 (8th Cir 1987). Thus, the Eighth Circuit Court of Appeals, in interpreting this phrase, has noted that "[t]he term equity denotes the spirit and habit of fairness and justness." *Id.* (internal quotations and citations omitted). "The term conscience means "the sense of right or wrong . . . together with a feeling of obligation to do or be that which is recognized as good." *Id.* (citing Webster's Third New International Dictionary 482 (1981)). The *Groseclose* Court "recognized that such broad language necessarily anticipates that the trier of fact, instead of attempting to channelize his decision with rigid and specific rules, will draw upon precepts of justice and morality as the basis for his ruling." (internal citations and quotations omitted).

Correspondingly, the applicable regulation defines "against equity and good conscience" as a situation in which an individual changed her "position for the worse," or "relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the overpayment itself." 20 C.F.R. § 404.509(a)(1). The Eighth Circuit Court of Appeals, however, has determined that this definition alone is "unreasonably narrow." *Groseclose*, 809 F.2d at 506 ("Notwithstanding the deference given

11

to administrative interpretations, we believe that the Secretary's definition of 'against equity and good conscience' is unreasonably narrow.  It cannot be said that the relinquishment of a valuable right and the changing of one's position for the worse represent the *only* circumstances in which recoupment would be inequitable.")(emphasis added).

After a discussion of the meaning of the phrase "against equity and good conscience," the *Groseclose* Court concluded:

> We find it difficult to imagine a more unfair or unjust situation than requiring a person who is without fault to repay overpaid benefits when that person had no knowledge of the overpayments. *See United States v. Blackwell,* 238 F. Supp. 342, 344-45 (D.S.C.1965) (although having found a change in position for the worse, the court emphasized the lack of knowledge in holding that recovery would be against equity and good conscience). Moreover, recoupment in this case would be inconsistent with the policy expressed in the legislative history--that recoupment should be equitable.
>
>     . . . [T]he record demonstrates that Groseclose was not at fault; the overpayments were not the result of an incorrect statement made by him, nor were they the result of a failure on his part to provide material information. Consequently, recoupment from Groseclose in these circumstances would be against equity and good conscience as that phrase is commonly understood.

*Id.* at 506.  *Accord Quinlivan v. Sullivan,* 916 F.2d 524, 527 (9th Cir. 1990) (determining that "equity and good conscience" should be determined broadly to encompass more than the three limited examples provided in the regulations); *Villate v. Sullivan,* 862 F. Supp. 514, 520-521 (D.D.C. 1994) (agreeing with the Eighth and Ninth Circuit Courts of Appeals, finding a broad interpretation to the pertinent phrase appropriate, and concluding "that it would be against equity and good conscience to require Plaintiff to repay that portion of the overpayment of which she had no knowledge and which was the result of negligence of the SSA.").  The Eighth Circuit Court of Appeals has also held that "someone who relies on erroneous information from an official source meets both requirements for waiver set forth

12

in 42 U.S.C. § 404(b): he or she is without fault, and recovery would be against equity and good conscience." *Gladden v. Callahan*, 139 F.2d 1219, 1223 (8th Cir. 1998).

Applying the broad definition of the phrase "equity and good conscience" adopted by the Eighth Circuit to Audet's case, this Court finds that Audet's situation squarely fits within the broadened spectrum of situations considered by the Eighth Circuit and other courts relying on an expanded interpretation of the phrase. The ALJ in this case determined that Audet was "without fault in creating the overpayment in question because her mental status at the time prevented her from fully understanding the reporting requirements to Social Security Administration of her work activity." (Tr. at 20.) Thus, as in *Groseclose,* Audet did not know she was receiving overpayments.

The Court concludes that recovery of the overpayments made to Audet would be "against equity and good conscience" as defined in 20 C.F.R. § 404.509.

## CONCLUSION

For the reasons discussed, the Court concludes that the Secretary's decision is not based on substantial evidence on the record as a whole, and the decision is reversed.

The case will be remanded for further proceedings consistent with this Memorandum and Order, pursuant to sentence four of 42 U.S.C. § 405(g). The Court directs the Secretary to waive the recovery of the overpayment. If the Secretary has withheld any funds from Audet's benefits toward the waived amount, the Secretary will reimburse those funds.

IT IS ORDERED:

1. The Secretary's decision is reversed, and this case is remanded for further proceedings consistent with this Memorandum and Order;

2. The Secretary will waive the recovery of the overpayment;

3. If the Secretary has withheld any funds from the Plaintiff Karen A. Audet's benefits toward the waived amount, the Secretary will reimburse those funds;

4. This decision is reached pursuant to sentence four of 42 U.S.C. § 405(g); and

5. Judgment will be entered by separate document.

DATED this 11th day of June, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge